# IN THE COURT OF APPEALS OF IOWA

No. 13-1839
Filed December 24, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DARRELL C. JOHNSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert (sentencing), Christopher L. McDonald (motion to correct illegal sentence), and Douglas F. Staskal (motion for more specific ruling), Judges.

Darrell Johnson appeals following the denial of his motion to correct illegal sentences imposed upon his pleas of guilty to three counts of willful injury causing serious injury and two counts of assault on a police officer with a dangerous weapon. **AFFIRMED.**

Angela Campbell of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Benjamin Parrott, Assistant Attorney General, John P. Sarcone, County Attorney, and Jeffrey Noble, Assistant County Attorney, for appellee.

Heard by Potterfield, P.J., and Doyle and Tabor, JJ. McDonald, J., takes no part.

**POTTERFIELD, P.J.**

Darrell Johnson appeals following the denial of his motion to correct illegal sentences imposed upon his pleas of guilty to three counts of willful injury causing serious injury and two counts of assault on a police officer with a dangerous weapon, in violation of Iowa Code sections 708.1, 708.3A(2), and 708.4(1) (2005). Johnson contends the convictions and sentences imposed upon three counts of willful injury causing serious injury were illegal because they were "all three the same crime," and the two convictions and consecutive sentences for assault on a police officer were "the same crime." He now argues the multiplicitous counts and sentences, for which he plea bargained and agreed to accept, violate the federal prohibition against double jeopardy.

**I. Background Facts and Proceedings.**

The minutes of testimony indicate that on August 15, 2005, Johnson shot his friend Jerry Miller during an altercation outside a bar on the south side of Des Moines. Miller attempted to prevent Johnson from driving after a night of drinking. During the ongoing argument, Johnson managed to get in the vehicle and Miller followed to stop Johnson from driving. When Miller got in the vehicle, Johnson produced a handgun and shot Miller five times—four bullets entered Miller's chest cavity (one puncturing a lung) and a fifth bullet destroyed Miller's middle finger. Miller's girlfriend, Megan Sullivan, heard Miller tell Johnson to put the gun down then she heard gunshots. Another witness stated he heard two shots, heard a woman scream, and then heard two more shots. Miller withdrew from the vehicle, walked a few steps, and fell to the ground. Johnson followed him and, as Miller was on the ground, Johnson pointed the gun at Miller again

but did not fire. Johnson got in the vehicle and drove away. Police officers responding to the scene gave chase. Two officers in separate vehicles pursued Johnson, employing a Pursuit Intervention Technique (PIT) maneuver to stop Johnson's vehicle. Johnson was ordered out of his vehicle and told to show his hands. When he got out of the vehicle, however, Johnson had a gun in his hands and raised it toward the two responding officers. Both fired. Johnson was hit and taken into custody.

Johnson was originally charged with two counts of attempted murder[1] and one count of assault on a police officer with a dangerous weapon. However, pursuant to plea negotiations, the State prepared an amended trial information alleging five counts; three counts of willful injury and two counts of assault on a peace officer with a dangerous weapon. Pursuant to the plea agreement, the court was to sentence Johnson to consecutive sentences totaling forty years (ten years on each of the willful injury convictions, and five years on each assault on a police officer), with the dangerous weapon enhancements on counts III, IV, and V to be served consecutively for a mandatory minimum of fifteen years.

At the plea proceeding, the prosecutor explained the factual bases for the plea agreement:

> Counts I, II, and III are all willful injury counts against the same victim, essentially at the same time. The case—the criminal charges started with the defendant firing a gun at the victim at essentially point-blank range. Ultimately the gun was fired five different times and the victim suffered five different bullet wounds, all of which caused him serious injury. Four of the bullets entered his chest cavity. One collapsed a lung. And the fifth bullet actually

---

[1] One count alleged the attempted murder of Jerry Miller; the second alleged the attempted murder of the two police officers.

essentially destroyed the middle finger on one hand. It doesn't operate normally anymore.

So although it was a series of events in very quick order, pursuant to these negotiations, we have filed three counts alleging that each one of three of the five bullets fired are a separate count.

As the evening progressed, the defendant then fled the scene and was chased by police officers. When they eventually pitted his vehicle and stopped the vehicle, he got out with a gun in hand. There were two police officers attempting to take him into custody, and as a result of that conduct, the State has filed these amended charges IV and V for assaulting the police officers by displaying this gun in a threatening manner. And that would constitute the factual basis, I believe, for Counts IV and V.

At the plea hearing, Johnson admitted he shot Jerry Miller three times—and each time he pulled the trigger he intended to and did cause Miller serious injury. He also admitted he "got in the car and left and took the cops on a high-speed chase. Got out of the car with a dangerous weapon and so, therefore, they felt threatened and justified." He acknowledged he displayed his firearm at the two officers knowing they were police officers.

On March 15, 2006, the district court followed the plea bargain and adjudged Johnson guilty of three counts of willful injury causing serious injury, in violation of Iowa Code section 708.4(1) (2005), and two counts of assault on a police officer with a dangerous weapon, in violation of sections 708.1 and 708.3A(2). The court sentenced Johnson to consecutive terms of imprisonment not to exceed forty years, with a mandatory minimum of fifteen years, finding "[c]onsecutive sentences are imposed based on the separate acts of violence at issue . . . and because the sentence is a product of plea negotiations and a joint recommendation deemed appropriate by the court."

In June 2012, Johnson filed a motion to correct illegal sentence, contending counts I and II either should have run concurrently or merged with

count III as they were all a result of a continuous offense against Miller with all the shots fired in rapid succession with no break in the action. He also argued there was only one "assault" on the officers. The State resisted, but did not challenge the procedure used by Johnson—the motion challenging an illegal sentence.

On October 1, 2013,[2] relying upon the recently decided *State v. Velez*, 829 N.W.2d 572, 583 (Iowa 2013), the district court noted that the facts were not in dispute:

> Defendant shot at the victim, Jerry Miller, five times, each time intending to cause serious injury. At least three of the shots fired actually did cause the victim serious injury. After shooting Miller, Defendant then led the police on a high-speed chase. At the conclusion of the chase, Defendant exited his vehicle. When he exited his vehicle, he knowingly brandished a handgun at two uniformed police officers present at the scene.

The district court concluded that using the completed-act test enunciated in *Velez*, 829 N.W.2d at 583,

> each of the three shots Defendant fired from the gun was the result of a voluntary bodily movement; and, those gunshots inflicted three distinct, individual serious injuries. Therefore, under the completed acts test, each gunshot was a completed act sufficient to support a conviction and separate sentence for each count of willful injury causing serious injury.

The court upheld the two convictions of assault on a police officer because the defendant "committed two offenses when he assaulted two distinct victims."

On October 16, 2013, Johnson filed a motion for more specific ruling, which was denied. Johnson now appeals, contending the sentences imposed are illegal.

---

[2] The parties sought continuances of the hearing on the motion to correct illegal sentence to wait for a ruling by the supreme court in the anticipated *Velez* case.

**II. Scope and Standard of Review.**

Claims of an illegal sentence may be raised at any time. Iowa R. Crim. P. 2.24(5)(a) ("The court may correct an illegal sentence at any time."); *State v. Pearson*, 836 N.W.2d 88, 94 (Iowa 2013). We review a claim of an illegal sentence for correction of errors of law. *State v. Hoeck*, 843 N.W.2d 67, 70 (Iowa 2014). "We review de novo a constitutional challenge to an illegal sentence." *Id.*

**III. Discussion.**

"[T]he Federal Double Jeopardy Clause protects against three types of offenses: protection against a second prosecution after acquittal; protection against a second prosecution after conviction; and protection against multiple punishments for the same offense." *Velez*, 829 N.W.2d at 584. In the case before us, Johnson argues the third type—multiple punishments for the same offense—has occurred.

"It is well established in Iowa law that a single course of conduct can give rise to multiple charges and convictions." *Id.* "An illegal sentence is a sentence that is not permitted by statute." *State v. Copenhaver*, 844 N.W.2d 442, 447 (Iowa 2014). "If the legislature criminalizes two separate and distinct acts, separate sentences on each act are not illegal." *Id.* Thus, we must determine "what unit of prosecution the legislature intended in enacting the statute." *Id.*

For example, in *Copenhaver*, 844 N.W.2d at 449, the court determined "the unit of prosecution for robbery requires the defendant to have the intent to commit a theft, coupled with any of the following—commits an assault upon another, threatens another with or purposely puts another in fear of immediate

serious injury, or threatens to commit immediately any forcible felony." *See* Iowa Code § 711.1. The court concluded that where the defendant had approached two tellers in a bank individually and demanded money from each, the State had shown the defendant intended to commit two separate and distinct thefts. *Copenhaver*, 844 N.W.2d at 450.

### A. Willful injury.

*Velez* involved an ineffective-assistance-of-counsel claim on direct appeal from a guilty plea, claiming the absence of a factual basis to support two separate willful injury counts. *Velez*, 829 N.W.2d at 575. At the time of his guilty plea, Velez did not make a separate factual basis for each of the two willful injury counts. *Id.* Velez's plea, like Johnson's, was a negotiated plea bargain with agreed-upon consecutive sentences. *State v. Velez*, No. 11-0472, 2012 WL 652298, at *1 (Iowa Ct. App. Feb. 29, 2012). Our court found no factual basis for a second count of willful injury.

On further review, the supreme court vacated our decision, stating,

[O]ur task consists of determining legislative intent for a question the legislature does not seem to have explicitly considered. Could the unit of prosecution be comprised of a single completed blow resulting in serious injury, or do all blows occurring in an attack on a single victim necessarily constitute a course of conduct, precluding multiple charges for the attack? If the former, the State has proven a factual basis for both guilty pleas. If the latter, the State has not proven a factual basis, and double jeopardy protection is triggered.

*Velez*, 829 N.W.2d at 580. The supreme court was required to determine whether the unit of prosecution for purposes of the offense of willful injury causing bodily injury could be "a single completed blow resulting in serious injury." *Id.* at 581. In analyzing the question presented, the *Velez* court vacated

the opinion of this court, which found no support for two counts of willful injury in the factual basis presented. *Id.* at 575. The supreme court went on to review the tests employed in this state and in other jurisdictions "in determining what constitutes multiple acts and thus could be considered multiple counts." *Id.* The court discussed three separate tests to determine if substantial evidence exists to convict a defendant of multiple assaults arising from a single altercation between the defendant and his victim: the separate-acts test, *id.* at 581-82; the break-in-the-action test, *id.* at 582-83; and the completed-acts test. *Id.* at 583. With respect to the completed-acts test, the court concluded the defendant had

> committed at least two completed acts constituting willful injury causing serious injury in violation of Iowa Code section 708.4. . . . Specifically, Welsh's minutes of testimony describe Velez striking Kennedy "20 to 40 times" with a metal pole. Since either a single blow or a single series of blows caused each serious injury, we find that there were more than two completed acts, as Kennedy suffered at least two serious injuries.

*Id.* at 583-84. The court held that under either the completed-acts test or the break-in-the-action test, "Velez committed two acts meeting the statutory definition of willful injury." *Id.* at 584. "Although [the *Velez* court] discussed each test separately, the goal in applying each test was to determine whether the record established a factual basis to convict the defendant of separate and distinct acts of assault or only a single continuous act of assault." *State v. Ross*, 845 N.W.2d 692, 702 (Iowa 2014) (discussing *Velez*).

Having found a factual basis for each count, the supreme court rejected Velez's double jeopardy claim:

> In order to determine if Velez's second conviction constitutes a violation of his double jeopardy protections, the key question we must answer is what the legislature intended would constitute a unit

of prosecution under Iowa Code section 708.4. In our analysis of whether two distinct factual bases existed to accept Velez's guilty plea, we analyzed legislative intent. We found that under both the break-in-the-action test and the completed-acts test, Velez committed two or more discrete acts of willful injury. Because the legislative intent was to punish these two or more acts, double jeopardy is not violated.

*Velez*, 829 N.W.2d at 584.

In *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014), the defendant pled guilty to three counts of intimidation with a dangerous weapon with intent. The supreme court, however, determined the record on appeal did not establish a factual basis for three separate and distinct acts of intimidation with a dangerous weapon with intent.[3] *Gines*, 844 N.W.2d at 441. The court noted, "Although the defendant conceded he fired three shots in the presence of others, *he did not*

---

[3] *Gines* was a direct appeal following a plea proceeding and presented the question "whether Gines's trial counsel was ineffective for allowing him to plead guilty to three counts of intimidation with a dangerous weapon with intent is dispositive of this appeal." 844 N.W.2d at 440.

> [A] challenge to an illegal sentence includes claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional. This conclusion does not mean that any constitutional claim converts a sentence to an illegal sentence. For example, claims under the Fourth, Fifth and Sixth Amendments ordinarily do not involve the inherent power of the court to impose a particular sentence. Nor does this rule allow litigants to reassert or raise for the first time constitutional challenges to their underlying conviction.

*State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009). However, an illegal sentence does include a claim that "'[t]he punishment meted out was . . . in excess of that prescribed by the relevant statutes, multiple terms were . . . imposed for the same offense, . . . [or] the terms of the sentence itself [were] legally or *constitutionally invalid* in any other respect.'" *Id.* at 872 (quoting *Hill v. United States,* 368 U.S. 424, 430 (1962).

Generally, a motion to correct an illegal sentence would not be the appropriate vehicle to challenge the factual basis for a plea. *Cf. State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999) ("Where a factual basis for a charge does not exist, and trial counsel allows the defendant to plead guilty anyway, counsel has failed to perform an essential duty."). However, the State did not object to Johnson's use of this vehicle and thus we address the merits of the claim. *See DeVoss v. State*, 648 N.W.2d 56, 60-62 (Iowa 2002).

*concede each shot was a separate or distinct act.* Additionally, when asked about his intent at the time, he stated that in making these *shots* he had the intent to injure or provoke fear or anger in other people."[4] *Id.* (first emphasis added).

The court thus used the *Ross* six-factor test to determine to determine if consecutive shots are separate and distinct acts or one continuous act for purposes of the charge of intimidation with a dangerous weapon: "'(1) the time interval occurring between the successive actions of the defendant, (2) the place of the actions, (3) the identity of the victims, (4) the existence of an intervening act, (5) the similarity of defendant's actions, and (6) defendant's intent at the time of his actions.'" *Id.* (quoting *Ross*, 845 N.W.2d at 705). The court vacated the sentences imposed upon the three counts of intimidation with a dangerous weapon with intent, but remanded to allow the State the opportunity to establish a factual basis. *Id.* at 441-42.

Here, we are not faced with the same dilemma presented in *Gines*. The record before us establishes at least three separate gunshots and three separate serious injuries—and Johnson admitted that each time he pulled the trigger he intended to cause Miller serious injury. Under the completed-acts test, Johnson committed at least three acts meeting the statutory definition of willful injury.

---

[4] In *Gines*, the supreme court remanded to the district court "to give the State the opportunity to establish a factual basis." 844 N.W.2d at 441. The court noted that if the State was unable to establish a factual basis for three separate and distinct charges, "the State did not get the benefit of its plea bargain" and the district court should vacate the defendant's convictions and return the parties to the position they were in before the plea agreement, including allowing the State to reinstate charges and file any additional charges supported by the available evidence. *Id.* at 442.

Because the legislative intent was to punish these three discrete acts, double jeopardy is not violated. *See Velez*, 829 N.W.2d at 584.

**B. Assault against a police officer while displaying a dangerous weapon.**

Johnson argues that he committed but one assault on the police officers. The unit of prosecution for purposes of Iowa Code section 708.3A(2) requires that the defendant (1) "commit[] *an* assault, as defined in section 708.1," (2) "against *a peace officer* . . . who knows that *the person* against whom the assault is committed is a peace officer," and "uses or displays a dangerous weapon." (Emphasis added.)

Under section 708.1,

A person commits an assault when, without justification, the person does any of the following:
. . . .
2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
3. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

We note that the legislature has used the singular throughout—"*an* assault," against "*a* peace officer," knowing "*the person* . . . is *a* peace officer." Iowa Code § 708.3A(2). The victim is defined by statute as "a peace officer." *See Copenhaver*, 844 N.W.2d at 449, 451-52 (affirming finding of two separate assaults with intent to commit a theft against two bank tellers); *State v. Constable*, 505 N.W.2d 473, 475 (Iowa 1993) (affirming sentencing on five counts of sexual abuse: two counts for one victim and three counts for the other

victim).[5]  Consequently, the record supports a finding that Johnson committed two separate acts of assault on a peace officer with a dangerous weapon.  *Cf. Ross*, 845 N.W.2d at 699 (addressing the "within an assembly of people" alternative of the offense of intimidation with a dangerous weapon with intent and noting "the victim is the assembly of people as a whole").  Multiplicitous sentences have not been imposed.

**IV. Conclusion.**

We conclude Johnson was not illegally subjected to multiple punishments for the same offense and therefore we affirm the denial of his motion to correct illegal sentences.  We affirm.

**AFFIRMED.**

---

[5] The State relies upon *State v. Delay*, 320 N.W.2d 831, 833 (Iowa 1982), in which the court affirmed convictions for two counts of assault with intent to inflict serious injury where the defendant had driven his vehicle at two sheriff's deputies.  The unit of prosecution, however, was not at issue in that case and we do not find it on point.